**In re Daniel NEJBERGER, d/b/a Piccolo's Famous Pizzas and Il Pastaio.**

**Civ. A. No. 90–3515.
Bankruptcy No. 89–13013.**

United States District Court,
E.D. Pennsylvania.

Sept. 28, 1990.

Prince Atlee Thomas, Ernest D. Preate, Jr., Office of the Atty. Gen., Philadelphia, Pa., for appellant.

Douglas H. Weiss, Astor, Weiss & Newman, Philadelphia, for appellee.

## MEMORANDUM

LUDWIG, District Judge.

The Pennsylvania Liquor Control Board appeals from the bankruptcy court's order of April 13, 1990 directing the renewal of debtor's previously expired liquor license.

112 B.R. 714. The bankruptcy court ruled that the 10–month grace period for license renewal allowed by the Pennsylvania Liquor Code, 47 P.S. § 4–470(a), constituted property of the debtor's estate—and that the board's termination of the license during the grace period violated the automatic stay provision of 11 U.S.C. § 362(a)(1).[1]

The following facts are agreed. *See* joint stipulation—appellant's appendix. Effective October 31, 1987 the Pennsylvania Liquor Control Board issued restaurant liquor license No. R–15538 to Daniel Nejberger for a one-year period ending October 31, 1988. On August 20, 1988 Nejberger filed an application to renew the license. On September 2, 1988 the board informed Nejberger that unless it received tax clearance from the Pennsylvania Department of Labor and Industry, the renewal application would be rejected.[2] On September 8, 1988 the board notified him that clearance was required from the Department of Revenue.[3]

On March 8, 1989 having not received the tax clearances, the board formally rejected the renewal application. The board's decision letter stated: "In view of the circumstance(s) for non-renewal of the license, you will be given a reasonable period of time to rectify this matter during which time we will hold the renewal application, bond, fees, etc. in abeyance, but in no event beyond the expiration date of the license term October 31, 1989." Joint stip. exh. 6.[4]

On August 17, 1989 Nejberger filed a chapter 11 bankruptcy petition and, on August 29, 1989 initiated an adversary proceeding in bankruptcy court to compel the board to renew the license. He contended that the refusal to do so until pre-petition debts—the delinquent taxes of $427,256.66 —were paid violated the automatic stay. By letter dated September 15, 1989 the board informed Nejberger that "[i]n view of the fact that the 10–month period has now expired we are terminating the application and closing the file." Joint stip. exh. 7.

In its decision, the bankruptcy court noted that the board's sole reason for the non-renewal was the licensee's outstanding tax liabilities. 112 B.R. at 716–17. Had the debtor tendered payment or made other arrangements to do so during the 10–month grace period, the renewal application would, presumably, have been approved. 112 B.R. at 718. Because the 10–month grace period did not expire until August 31, 1989—two weeks after the chapter 11 petition was filed—the debtor's estate retained a property interest in the expired license as of the date of filing of the bankruptcy petition. 112 B.R. at 718. The bankruptcy court also determined that the licensee should not be restricted to the 10–month period to cure its tax debts because the filing of the chapter 11 petition constituted a proposal for a "deferred payment plan," satisfying the tax clearance requirements of 47 P.S. § 4–477(a)(6)(iii). 112 B.R. at 720.

The bankruptcy court held that "the Board's refusal to renew the liquor license within the statutory renewal period solely because of the debtor's failure to pay a prepetition tax debt falls within the scope of activities prohibited by the automatic

---

1. Jurisdiction is 28 U.S.C. § 158(a). Review of legal conclusions is plenary. The clearly erroneous standard applies to findings of fact. *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir.1986).

2. The board must review the state tax status of every license renewal applicant. 47 P.S. § 4–477(c). The board shall not approve a renewal application if the applicant has failed to "pay any State taxes not subject to a timely administrative or judicial appeal or subject to a duly authorized deferred payment plan." 47 P.S. § 4–477(d)(3). Here, the Department of Labor and Industry notified the board that

Nejberger owed the Pennsylvania Unemployment Compensation Fund $72,808.41. Joint stip. exh. 3.

3. The Department of Revenue claimed $354,-448.25 in delinquent taxes. Joint stip. exh. 4.

4. Under 47 P.S. § 4–470(a), the board may, in its discretion, accept a renewal application filed within 10 months after the expiration date of the license. The 10–month period provided by the statute ended on August 31, 1989. The board's decision to extend the time for renewal until October 31, 1989 was not explained.

stay. (Citing cases)." 112 B.R. at 721–22.[5]

On appeal, the board argues that the renewal grace period does not extend rights in a liquor license that had expired before the time of bankruptcy. It claims that under § 4–470 of the Liquor Code the licensee holds the license at the Liquor Control Board's discretion and that "[b]ecause of the debtor's tax status at the time of his 1988 renewal application, there was no need for the LCB to deliberate further on the debtor's renewal application." Appellant's brief at 14.

Section 4–470 of the Liquor Code, 47 P.S. § 4–470, states in relevant part:

(a) All applications for renewal of licenses ... shall be filed with a new bond, requisite license and filing fees at least sixty days before the expiration date of same: Provided, however, That the board, in its discretion, may accept a renewal application filed less than sixty days before the expiration date ... upon reasonable cause shown and the payment of an additional filing fee of one hundred dollars.... And provided further, That except where the failure to file a renewal application on or before the expiration date has created a license quota vacancy after said expiration date which has been filled by the issuance of a new license, after such expiration date, but before the board has received a renewal application within the time prescribed herein the board, in its discretion, may, after hearing, accept a renewal application filed within ten months after the expiration date of the license with the required bond and fees upon the payment of an additional filing fee of two hundred fifty dollars ($250.00) for late filing.

■ By statute, renewal of a Pennsylvania liquor license is contingent on board approval. *Commonwealth v. Liederkrantz*, 450 Pa. 423, 426, 300 A.2d 87, 89 (1973) ("Renewal of a license is not an automatic procedure requiring only a ministerial function of collecting new fees and issuing a new piece of paper"). Renewal applications filed during the 10–month grace period allowed by § 4–470 may be granted but only by the board acting "in its discretion ... after hearing." 47 P.S. § 4–470(a). The board is divested of its discretionary renewal power only if applicant's "failure to file a renewal application on or before the expiration date has created a license quota vacancy ... which has been filled" before applicant's renewal application is received. *Id. See Pa. Liquor Control Board v. Wayside Bar, Inc.*, 120 Pa.Commw. 176, 547 A.2d 1309 (1988).

■ Notwithstanding the discretion accorded the board under § 4–470, an interest in a liquor license is property of a bankrupt estate under 11 U.S.C. § 541.[6] "[Section 541(a)(1) ] is very broad and includes both

5. The bankruptcy court also concluded that "[t]he Board's position must be ... that the renewal of a liquor license is a regulating function of the state that is exempt from the operation of the automatic stay by virtue of 11 U.S.C. § 362(b)(4).... This section provides that the filing of a bankruptcy petition does not operate as a stay 'of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.'" 112 B.R. at 722. The bankruptcy court rejected this argument because the Liquor Code provisions at issue were designed "to protect the state's public fisc, and not to address welfare, health, or safety concerns." 112 B.R. at 722. *In re Hoffman*, 65 B.R. 985 (D.R.I.1986) (license transfer); *In re William Tell II, Inc.*, 38 B.R. 327 (N.D.Ill.1983); *In re Sampson*, 17 B.R. 528, 530 (Bankr.D.Ct.1982) ("[I]f the focus of the police or regulatory power is directed at the debtor's financial obligations rather than the state's health and safety concerns, Code Section 362(b)(4) is inapplicable");

*In re Ryan*, 15 B.R. 514, 519 (Bankr.D.Md.1981) ("The exception [in § 362(b)(4) ] was intended to encompass only governmental action against the Debtor necessary to 'prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws' "). *See In re Blarney, Inc.*, 53 B.R. 162 (Bankr.D.Minn.1985); *In re Aegean Fare, Inc.*, 35 B.R. 923 (Bankr.D.Ma.1983); *In re Gencarelli*, 14 B.R. 751 (Bankr.D.R.I.1981); *In re Pizza of Hawaii, Inc.*, 12 B.R. 796 (Bankr.Hawaii 1981). This issue was not preserved on appeal.

6. 11 U.S.C. § 541(a):
"The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case."

tangible and intangible forms of property, causes of action, etc. Thus, while the license itself may not be property of the estate, the trustee's rights with regard to the license ... are property of the estate within the meaning of § 541(a)(1)." *In re Kramer,* 71 B.R. 2, 5 (Bankr.E.D.Pa.1986). *See also In re Hodges,* 33 B.R. 51, 53 (Bankr.E.D.Pa.1983) ("[I]t is clear that the liquor license constituted one of the 'legal or equitable interests of the debtor in property as of the commencement of the case' 11 U.S.C. § 541(a)(1)"); *In re Gencarelli,* 14 B.R. at 752 ("[T]he liquor license clearly constitutes a property interest sufficient to invoke the jurisdiction of [the bankruptcy court under § 541]").

■ Citing *Counties Contracting and Construction Co. v. Constitution Life Insurance Co.,* 855 F.2d 1054, 1057 (3d Cir. 1988) ("[T]he grace period [for payment of a life insurance policy premium] was properly a part of debtor's estate"), the bankruptcy court recognized and enforced debtor's "statutory right to renew after 'expiration' of the license." 112 B.R. at 718. Inasmuch as the licensee's bankruptcy petition was filed during the renewal application grace period, the state regulatory scheme as to delinquent taxes was stayed by operation of the bankruptcy code—in this instance, the indefinite stay of § 362(a).[7]

■ The bankruptcy court was correct in ruling that the renewal grace period in this case was an enforceable interest of the bankrupt estate. The remaining question is whether it erred in ordering the Liquor Control Board to renew debtor's liquor license instead of enjoining the board from refusing to renew because of the outstanding state tax delinquencies. An injunctive remedy against discriminatory treatment under 11 U.S.C. § 525 has been utilized by some bankruptcy courts in similar liquor license renewal or transfer settings. *E.g., In re Hoffman; In re William Tell II, Inc.; In re Blarney; In re Pizza of Hawaii, Inc.;* and *In re Gencarelli, supra,* at n. 5. *Compare In re Aegean Fare, Inc., supra,* at n. 5 (license renewal ordered). By proceeding with an injunctive order not to consider the state tax delinquency for any purpose, a bankruptcy court achieves an appropriate Bankruptcy Code result with the least intrusion on the state's statutory and regulatory system.

The license renewal decreed by the bankruptcy court interdicts the state Liquor Code's procedure for annual renewal, the statutorily possible elimination of a license quota vacancy, and the discretionary nature of the board's renewal process.[8] Here, that remedy is overly broad and unnecessary. The sole reason given by the board for non-renewal—the lack of tax clearances—does not compel the conclusion that, otherwise, the liquor license would have been renewed. Given the licensee's prepetition tax delinquencies, the board, by statute, could not consider the renewal application on the merits.

The predicate of the bankruptcy court order is that the unpaid taxes were the only impediment to renewal. However, the board submits that under the state statute it never had the opportunity to exercise its discretion. Appellant's brief at 14. The effect of a stay or injunction tailored to the state tax accounts should be to permit the board to review and act on the renewal application consistent with the unaffected provisions of the Liquor Code and without violating the Bankruptcy Code.

The order of the bankruptcy court directing the board to renew debtor's license will be vacated. This proceeding will be remanded to the bankruptcy court with instructions to direct debtor, if he so chooses, to submit an updated liquor license renewal

---

**7.** In *Counties,* the 60–day stay provision of 11 U.S.C. § 108(b) was involved. Here, the applicability of § 108(b), rather than § 362(a), is not asserted.

**8.** As the bankruptcy court noted, an indefinite stay does not take into account the possibility that even if the debtor cured its outstanding tax delinquencies, the board could have other reasons for denying future renewal applications. Renewal may be denied, for example, for violation of any state law or board regulation relating to use, storage or possession of alcoholic beverages—or if "the applicant has by his own act become a person of ill repute." § 4–470(a).

application to the Pennsylvania Liquor Control Board by a date certain. The Liquor Control Board should be directed that, in acting upon the license renewal application, it must consider the provisions of 47 P.S. § 4–477(a)(6)(iii) to be enjoined, or stayed, pending the bankruptcy court's confirmation of a deferred payment plan for delinquent state taxes.[9]

9.  Under the Pennsylvania Liquor Code if license renewal is refused, there is a procedure for appeal to the Common Pleas Court of the county in which the premises to be licensed are located. 47 P.S. § 4–464.