In re Daniel **NEJBERGER**, d/b/a Piccolo's Famous Pizza and Il Pastaio Pennsylvania Liquor Control Board, Appellant.

No. 90–1796.

United States Court of Appeals, Third Circuit.

Argued March 11, 1991.

Decided May 22, 1991.

Ernest D. Preate, Jr., Pennsylvania Atty. Gen., Prince A. Thomas, (ARGUED), Sr. Deputy Atty. Gen., Office of the Atty. Gen., Philadelphia, Pa., for appellant.

Edward J. DiDonato, (ARGUED), Aris J. Karalis, Ciardi, Fishbone & DiDonato, Philadelphia, Pa., for appellee.

Before MANSMANN, HUTCHINSON and WEIS, Circuit Judges.

OPINION OF THE COURT

WEIS, Circuit Judge.

Although the debtor's Pennsylvania liquor license had expired before he filed for relief under the Bankruptcy Act, a state statute left open the possibility that the license could be renewed. In these circumstances, we conclude that the bankruptcy estate has a property interest and the bankruptcy trustee may request the Liquor

Board to consider an application for renewal. The district court had adopted similar reasoning and we will therefore affirm its order.

The Pennsylvania Liquor Control Board issued a liquor license to Daniel Nejberger for a one-year period effective October 31, 1987 to October 31, 1988. On August 20, 1988, he filed an application to renew the license for the following year.

In September 1988, the Board notified Nejberger that it would reject his renewal application unless it received tax clearances from two state agencies. The Department of Labor and Industry had asserted a balance due the Unemployment Compensation Fund of $72,808.41, and the Department of Revenue had claimed $354,448.25 for sales and income taxes. On December 21, 1988, the Board sent a formal notice of objection to renewal of the license because of the failure to verify that all tax reports had been filed and all taxes paid.

On March 9, 1989, the Board advised Nejberger that his application for renewal was "refused" for failure to pay the taxes due. The letter continued, "In view of the circumstance(s) for non-renewal of the license, you will be given a reasonable period of time to rectify this matter during which time we will hold the renewal application ... in abeyance, but in no event beyond the expiration date of the license term October 31, 1989."

On August 17, 1989, Nejberger filed a Chapter 11 Bankruptcy Petition. On August 29, 1989, he docketed an adversary action in the bankruptcy court to compel the Board to renew the license. In a letter dated September 15, 1989 the Board advised Nejberger, "in view of the fact that the 10-month period has now expired, we are terminating the application and closing the file."

The bankruptcy judge determined that the application would have been granted upon payment of the delinquent taxes on August 17, 1989, the date Nejberger filed the bankruptcy petition and, therefore, the estate retained a property interest in the license. He concluded that the taxes due were prepetition claims against the bankruptcy estate and therefore could not be grounds for denying a license. Accordingly, he directed the Liquor Board to grant the application for renewal. 112 B.R. 714.

On appeal, the district court agreed that the expectation created by the renewal grace period was an enforceable property interest of the bankruptcy estate. 120 B.R. 21. Nevertheless, because the decision to renew the license during the grace period was discretionary, and provisions of the Liquor Code other than the nonpayment of taxes could have some bearing, the district court believed the bankruptcy judge's order was overbroad. The district court, therefore, directed that the debtor could choose to resubmit an application to the Board, which would then consider the matter without regard to the unpaid taxes.

After the district court filed its order and opinion, the bankruptcy judge appointed a Chapter 7 trustee to replace the debtor in possession under Chapter 11. The trustee is now a party to this appeal.

On appeal, the Board contends that the license expired on October 31, 1988 and was not property of the estate at the time of filing for bankruptcy ten months later. The trustee asserts that because the case was converted from Chapter 11 to Chapter 7 and a trustee was appointed, the appeal is moot or the matter should be remanded. The trustee also maintains that the debtor did have an interest in renewal of the license that qualified as property under the Bankruptcy Act.

### I.

11 U.S.C. § 541(a)(1) defines property of the bankruptcy estate, with certain exceptions, as "all legal or equitable interests of the debtor in property as of the commencement of the case." As we said in *Counties Contracting & Constr. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1057 n. 3 (3d Cir.1988), the term is "broadly defined in 11 U.S.C. § 541(a) ... [t]he legislative history makes it plain that the scope of this paragraph is pervasive." *See* H.R.Rep. No. 90–595, 95th Cong., 1st Sess. 367, U.S. Code Cong. & Admin.News, 1978, pp. 5787,

6323 (1977), *reprinted in* L. King, *Collier on Bankruptcy* App. 2 (15th ed. 1990) ("The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in section 70a of the Bankruptcy Act....").

Although section 541 defines property of the estate, we must look to state law to determine if a property right exists and to stake out its dimensions. *See Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979); *In re Roach,* 824 F.2d 1370, 1374 (3d Cir.1987) ("property interests are created and defined by state law"). The label, however, that state law affixes to a particular interest in certain contexts is not always dispositive. The principal question is whether the substance of the right or interest in question brings it within the scope of estate property under the Bankruptcy Act.

In *21 West Lancaster Corp. v. Main Line Restaurant, Inc.,* 790 F.2d 354 (3d Cir.1986), we concluded that although not "property" subject to a security interest filed in accordance with state law, a Pennsylvania liquor license was nevertheless "property" subject to lien for unpaid federal employment taxes. We explained that "[w]hile state law creates legal interests and defines their incidents, 'the ultimate question whether an interest thus created and defined falls within a category stated by a Federal statute, requires an interpretation of that statute which is a Federal question.'" *Id.* at 356.

In this light we must read *Replogle v. Pennsylvania Liquor Control Bd.,* 514 Pa. 209, 523 A.2d 327 (1987), and *1412 Spruce, Inc. v. Pennsylvania Liquor Control Bd.,* 504 Pa. 394, 474 A.2d 280 (1984). In *Replogle* the Pennsylvania Supreme Court held that a licensee has no "property interest in the right to sell liquor in this Commonwealth," and that a license is granted subject to the conditions the state may impose. 523 A.2d at 329. Therefore, when a license was terminated by virtue of an election held pursuant to a local option provision in the Liquor Code, the licensee could not recover compensation for loss of property.

In *1412 Spruce, Inc.* the state court quoted the language of 47 Pa.Stat.Ann. § 4–468(b.1), "The license shall continue as a personal privilege granted by the board and nothing herein shall constitute the license as property." 474 A.2d at 281. Based on that statutory text, the court determined that a liquor license was not property that could be subject to attachment and execution. *See also In re Revocation of Liquor License No. R–2193,* 72 Pa.Commw. 367, 456 A.2d 709 (1983) (liquor license does not constitute personal property subject to a security interest under the Uniform Commercial Code).

On the other hand, the state courts have recognized that a liquor license has value. The right to apply for a transfer of the license on the licensee's death "is a right which possesses value," *In re Estate of Feitz,* 402 Pa. 437, 445, 167 A.2d 504, 507 (1961), and "is a valuable asset of the decedent's estate." *Id.,* 167 A.2d at 508. A licensee whose premises were condemned was entitled to have the loss and value of the license considered in the award of compensation. *Redevelopment Authority of Philadelphia v. Lieberman,* 461 Pa. 208, 336 A.2d 249, 257–58 (1975).

The Liquor Code also provides that a licensee may apply to the Board to have a license transferred from one person to another or one place to another. 47 Pa.Stat. Ann. § 4–468 (Purdon Supp.1990). As a result, in practice, a liquor license can be bought and sold in the market place. *21 West Lancaster Corp.,* 790 F.2d at 357.

■ The reality is that in Pennsylvania a liquor license does have value. We are persuaded, therefore, that it is appropriately considered property of the estate within the broad definition of section 541 of the Bankruptcy Act. The Court of Appeals for the Sixth Circuit came to the same conclusion in a case construing a similar Ohio statute. *In re Terwilliger's Catering Plus, Inc.,* 911 F.2d 1168 (6th Cir.1990). Two bankruptcy court rulings have also held that a Pennsylvania liquor license is property of the estate. *In re Kramer,* 71

B.R. 2 (Bankr.E.D.Pa.1986); *In re Hodges,* 33 B.R. 51 (Bankr.E.D.Pa.1983).

## II.

Determining that a Pennsylvania liquor license is property of the estate does not, however, resolve the issue in this case because at the time the bankruptcy petition was filed the debtor did not hold a license. What he did hold was the opportunity to have his renewal application reconsidered during a ten-month "grace period" following the expiration of his license.

In *Counties Contracting & Constr. Co. v. Constitution Life,* a life insurance policyholder filed a bankruptcy petition after the due date for the annual premium, but before the expiration of a 31–day grace period for payment included in the policy. We concluded in that instance that the right inherent in the grace period was property of the debtor's estate. To determine whether the situation here is analogous to the one in *Counties* requires an examination of the statutory scheme of the Pennsylvania Liquor Code and the procedures followed by the Board.

The Liquor Code provides that:

"except where the failure to file a renewal application on or before the expiration date has created a license quota vacancy after said expiration date which has been filled by the issuance of a new license, after such expiration date, but before the board has received a renewal application within the time prescribed herein the board, in its discretion, may, after hearing, accept a renewal application filed within ten months after the expiration date of the license."

47 Pa.Stat.Ann. 4–470(a) (Purdon Supp. 1990); *see also Pennsylvania Liquor Control Bd. v. Wayside Bar, Inc.,* 120 Pa. Commw. 176, 547 A.2d 1309, 1310 (1988).

Although the Board is not required to grant a renewal, the Code does create an expectation that so long as a new license has not been issued to fill a quota vacancy, the Board will consider the application for renewal. The fact that this expectation is merely the right to apply for renewal does not prevent it from being a valuable inter-

est which becomes part of the bankruptcy estate. *See In re Estate of Feitz,* 402 Pa. 437, 167 A.2d 504.

The letter sent by the Board on March 8, 1989 is consistent with the expectation created by the statute that renewal could be granted within the ten-month period. The Board wrote that it would hold Nejberger's application in "in abeyance" until October 31, 1989 and did in fact keep the file open for ten months. On September 15, 1989 the Board advised that it was closing the file.

■ We are persuaded that the debtor had an expectation of consideration for renewal that qualifies as a property interest within the meaning of the Bankruptcy Act. The Board's argument that the license had expired on October 31, 1988 fails to address the opportunity for renewal granted by the Liquor Code.

Significantly, the debtor filed the bankruptcy petition and the adversary action against the Liquor Board before the expiration of the ten-month renewal period. Thus, unlike the situation in *Counties Contracting,* the debtor here acted promptly and preserved his rights to seek a renewal from the Board.

The bankruptcy judge concluded that the unpaid taxes claimed by the Commonwealth were prepetition debts that the Liquor Board could not consider as a basis for denying renewal of Nejberger's license. The Board did not contest that holding on appeal to the district court or to this Court. Consequently, we do not address it here.

After ruling that the bankruptcy judge erred in directing the Board to issue a license to Nejberger, the district court offered the debtor the opportunity to submit a current renewal application to the Board for review. The Board would then be free to exercise its discretion to grant or deny renewal, excluding, however, from consideration the fact that taxes remained unpaid. We agree with the district court's decision to limit the scope of relief and will affirm its order. The bankruptcy judge's order inappropriately barred the Liquor Board from its statutory obligation to exer-

cise discretion in reviewing a renewal application.

The debtor seeking to take advantage of the opportunity granted by the Code for renewal during the ten-month period following expiration must also accept the statutory requirement of an exercise of discretion by the Board. In granting discretion to the Board, the Liquor Code enumerates some factors that may be considered: whether the licensee violated the laws of the Commonwealth or regulations of the Board regarding "the manufacture, transportation, use, storage, importation, possession or sale of liquors ... or the conduct of a licensed establishment;" whether "the applicant has by his own act become a person of ill repute;" and whether "the premises do not meet the requirements of this act or the regulations of the board." 47 Pa.Stat.Ann. § 4–470 (Purdon Supp. 1990).

■ Although this Chapter 11 case was later converted to a Chapter 7 proceeding after the district court's order, that does not affect our disposition. We, therefore, reject the trustee's argument that the case is moot. As noted earlier, a liquor license has value and is transferrable. Thus, conceivably the Board could issue a renewal license to the trustee who might request a transfer to a third party. *See* 2 L. King, *Collier on Bankruptcy* § 323.01 (15th ed. 1990).

This statutory scheme will require the trustee to appraise the desirability of pursuing a renewal application and the likelihood of success. The circumstances now are different from those that led the debtor to file the adversary action under Chapter 11.

Accordingly, we will affirm the district court's order and remand the case for further proceedings consistent with this opinion.